Dorn & Kostner *vs.* Bayer.

*Judgment reversed.and procedendo ordered.*

(Decided June 13th, 1860.)

---

# John Dorn and Nicholas Kostner *vs.* Andrew Bayer.

Where a bill does not call for an answer under oath, and it is not read by the complainant, at the hearing, as evidence, it cannot, though sworn to,

Dorn & Kostner *vs.* Bayer.

be considered as evidence on final hearing, and can only be looked to by the court, in connection with the bill, for the purpose of ascertaining what points are at issue.

A bill of sale, conveying, as far as appears, all the property of the grantor, (he not showing that he had any other property,) and the grantee *admitting* that he had paid nothing for it, and that he was persuaded to take it, in order to prevent a creditor of the grantor from getting hold of his store, is fraudulent and void as against creditors.

Appeal from the Circuit Court for Baltimore City.

The object of the bill filed in this case, on the 21st of December 1857, by the appellee against the appellants, was to have vacated, as fraudulent, a bill of sale from Kostner to Dorn, dated the 27th of August 1857, by which the grantor in consideration of $600, in hand paid, conveyed to the grantee, certain household furniture, and stock of goods, store fixtures, &c., in a confectionary store, No. 72, South Bond street, Baltimore, and for an injunction and a receiver.

The bill alleges that, in May 1857, the complainant, Bayer, sold and conveyed to Kostner, for $1775, a house and lot on Bond street, taking a mortgage thereon for the whole of the purchase money; that, at this time, Kostner owned a house and lot, in Caroline street, and goods and chattels in his store and dwelling; that Kostner failed to pay any part of the mortgage debt, and sold his house and lot, in Caroline street, and conveyed, by bill of sale, the goods and chattels aforesaid to Dorn, for the pretended consideration of $600, thus leaving himself without any visible means to pay his debts, and consequently insolvent; that upon foreclosure of the mortgage, and sale of the Bond street property, there remains due the complainant the sum of $300 on the mortgage debt; and that Kostner is indebted to others in small sums of money, and has nothing whatever to pay his debts except the property above mentioned. The bill then charges, that the bill of sale to Dorn was without any legal consideration, and is colorable merely, and was made and executed with the common intent and design of the parties thereto, to hinder, delay and defraud the creditors of Kostner, who has, ever since the making of the same, had the possession and use of the property therein mentioned, in the same manner as before, and

19     v.16

if either Dorn or Kostner knew these proceedings were being instituted, they would conceal and carry away the said goods and chattels where complainant could never find them. The bill then calls for answers, but not on oath, and prays that said bill of sale may be declared void, and for an injunction to restrain the sale of the goods mentioned in the bill of sale, and the appointment of a receiver to take charge of them, and for general relief.

The injunction was granted, and the receiver appointed upon the filing of the bill, and the defendants then answered under oath, denying all fraud charged in the bill, and averring the perfect *bona fides* of the transactions in relation to the bill of sale. On filing their answers, the defendants entered an appeal from the order granting the injunction and appointing the receiver, which, by agreement, was subsequently withdrawn, and the injunction was, by order of court, continued till final hearing. A commission was then issued and testimony taken, the material parts of which are as follows:

In reference to the complainant's claim, it was admitted that the mortgage to Bayer was foreclosed under proceedings in the Circuit court for Baltimore city, and that the property sold under the decree for $1600, the balance of which, amounting to $1458.36, after payment of costs, commissions, and expenses, was applied in part payment of Bayer's mortgage debt; and that this mortgage debt was evidenced by two promissory notes, made by Kostner, one for $1200, and the other for $575, the latter of which was endorsed by A. Baumgartner, for Kostner's accommodation, as a further security for the payment of the said note, which was not protested at maturity.

*George Bayer*, a witness for the complainant, testified that he had a conversation with Dorn, on the 19th of December 1857, in which witness asked him about the bill of sale he took on Kostner's store, and Dorn said he was persuaded by Andrew Baumgartner and Mrs. Baumgartner, to take the bill of sale, for the reason so that Andrew Bayer could not get hold of Kostner's store; witness then asked Dorn, if he had paid the $600 for that store, to which Dorn replied that he

·had not paid any money, that he had only done it for show, so that Andrew Bayer could not get hold of the store; Dorn then said to witness aside, "Don't say anything about it."

*John Schwert,* another witness, testified that the counters and furniture in the dwelling and store of Kostner, in Pratt street, where he has lived since the 16th of January 1858, and carried on the confectionary business, are the same that he had in Bond street, and he removed them there from Bond street.

Testimony was also offered on the part of the complainant, by other witnesses, tending to show that Kostner had no other property, besides the house and lot in Caroline street and the house and lot in Bond street, and the furniture, stock of goods, and fixtures, before mentioned.

*Frederick Kline,* the only witness for the defendants, testified that, some time in the summer of 1857, Kostner and Dorn came to the house of witness, and requested him to draw up a bill of sale, and, if witness is not mistaken, the amount for which it was to be drawn was something like $600; that the goods sold were Kostner's household furniture and store goods, he thinks; at that time, Kostner was living in Bond street, and the property, conveyed by that bill of sale, were the furniture and store goods in that house; during the time witness was writing the bill of sale, Kostner and Dorn had a conversation between themselves about how much of the consideration of the bill of sale had passed between them already, and they agreed there was an amount of between $153 and $154 (the odd cents witness does not remember) then coming to Kostner from Dorn, as the balance to make up the consideration in the bill of sale, and this balance was paid to Kostner by Dorn, in the presence of witness, in notes and gold, with some little silver.

The court (KREBS, J.) passed a decree declaring the bill of sale null and void as against the complainant and all other creditors of Kostner, who may become parties to this suit. From this decree, and from the order continuing the injunction till final hearing, the defendants appealed.

The cause was argued before Le Grand, C. J., Tuck and Bartol, J.

*Thos. 1. Warrington* for the appellants:

1st. The conveyance sets forth upon its face a good and valid consideration; the answer is clear that Dorn paid a fair consideration and the proof sustains the answer. The conveyance is *prima facie* evidence for the appellants. The possession was consistent with the conveyance. A court of equity, like a court of law, will not infer fraud—it must be proved. 3 *Md. Rep.*, 225, *Glenn vs. Grover, et al.* 9 *Gill*, 218, *Beatty vs. Davis.* 2 *Md. Rep.*, 375, *Faringer vs. Ramsay.* Courts of equity always reluctantly interfere against the legal title and only in cases of fraud clearly proved. 3 *Md. Rep.*, 99, *Furlong vs. Edwards.* The appellee has nothing to complain of; he was not a creditor at the time the conveyance was made. His debt was secured by a mortgage and Kostner's note, endorsed by Baumgartner, for $575, which he still holds, and is liable to be put in suit at any moment. Again, where a debt is secured by mortgage it repels the presumption of fraud. 3 *Johns. Ch. Rep.*, 481, *Reade vs. Livingston.*

2nd. The validity of the conveyance depends on the intention of the parties to it. As to their design they have been called upon by the complainants to speak, and in such a case an answer, responsive to the bill, emanating from a party made a witness by the act of the complainant, speaking in reference to the motives and views under the influence of which the transfer in dispute was made—a matter lying necessarily in their own bosoms—must be held as conclusive upon the question of intention, unless overcome by the testimony of two witnesses, or that of one with corroborating circumstances. 3 *Md. Rep.*, 229, *Glenn vs. Grover, et al.* 9 *Gill*, 218, *Beatty vs. Davis.* And if there were pregnant circumstances, yet standing alone, without the aid of positive testimony of a single witness they would be unavailing. 3 *G. & J.*, 433, *Roberts vs. Salisbury.*

3rd. There is nothing in the cause to justify the court in making the injunction perpetual. The answer denies all fraud and insolvency. Where the grantor in a deed does not become an applicant for relief under our insolvent laws, it cannot be pretended that his deed was made with the view of becoming an insolvent debtor. 4 *Gill*, 38, *Wheeler vs. Stone*.

4th. There is no proof of fraud or insolvency. The appellee has been unable to show that Kostner, at the time of the conveyance, was in debt to any one, and, therefore, the averments in the bill which assail it on the ground of fraud and insolvency fall to the ground. 4 *Gill*, 38.

5th. It is a well settled doctrine that a debtor, in failing circumstances, may prefer one creditor to another, by a transfer of his property, and it is equally clear that if such a transfer be assailed on the ground of fraud, the *onus* of proof lies on the party impeaching the deed. 3 *Md. Rep.*, 212, *Glenn vs. Grover, et al.*

6th. It is settled as a general rule, with but few exceptions, that no creditor can have a voluntary deed set aside on the ground of its having been made to his prejudice, unless he was a creditor at the time the conveyance was made. 2 *Bland*, 26, *Kipp vs. Hanna.* 5 *G. & J.*, 432, *Birely vs. Staley.* This doctrine applies with much stronger force to a conveyance which shows upon its face a valuable consideration.

7th. Where a creditor seeks the aid of a court of equity to pursue personal property fraudulently conveyed away, a judgment must first be obtained against the debtor before such property can be reached, and in such a pursuit a *fieri facias* must also have been issued and returned showing that the debtor has no goods and chattels whereby the debt can be satisfied. After such a return is made then the creditor may go into a court of equity. 5 *G. & J.*, 432. Again, a creditor at large, before judgment, is not entitled to the interference of a court of equity by injunction to prevent a debtor from selling or disposing of his property in fraud of such a

creditor. 2 *Johns. Ch. Rep.*, 144, *Wiggins vs. Armstrong.* 10 *Md. Rep.*, 500, *Uhl vs. Dillon.*

8th. Where a mortgagee files a bill for foreclosure and sale he is confined to his remedy on the mortgage. The suit cannot be extended to other property, or to the person of the mortgagor in case the mortgaged premises prove insufficient to satisfy the debt. The further remedy of the mortgagee is at law, where he may at the same time sue on the bond, note, or on the covenant to pay the money, and after a foreclosure and sale in equity, he may sue at law on the bond or note and recover the deficiency. 3 *Johns. Ch. Rep.*, 330, *Dunkley vs. Van Buren.* 2 *Bland,* 629, *Andrews vs. Scotton.*

9th. Where a creditor holds a promissory note, endorsed and passed to him by the debtor, as additional security to a mortgage for his claim, he is bound to exhaust all his legal remedies on that note, and on a bill filed by him, he must aver such facts in his bill, showing that he has exhausted his remedies at law, otherwise a court of equity should not interfere. 12 *G. & J.*, 477, *Richardson vs. Stillinger.*

*L. M. Reynolds* for the appellee:

If it appears that this deed was made to hinder and delay creditors, the decree must stand if Bayer is one of these creditors. And if the deed be void and fraudulent, then must the injunction and receiver stand, to make the decree at all available as a remedial instrument. It is contended that the answers are evidence to be overcome with two witnesses, or one with corroborating circumstances. Such is not now the law of Maryland, when the bill does not require the answer under oath. *Act of* 1852, *ch.* 133. It is said, again, that Bayer was not a creditor of Kostner at the time of making the deed because his *debt* was secured by a mortgage and *Kostner's notes.* The reason assigned shows he was a creditor at the time. It is likewise said that because the mortgage claim was also represented by certain notes in the possession of Bayer, he should have first exhausted his remedy on these notes, but it is admitted that the mortgagee may pursue his

remedy on the mortgage itself, the bond or the notes, and the covenant to pay all at the same time. 2 *Bland*, 665. This case comes within the law of the case in 2 *Bland* Here Bayer had exhausted his remedy against the mortgaged premises, and was about to bring his suit at law on the covenant in the mortgage when the Act of 1835, ch. 380, permitted him to go into equity immediately.

There can be no doubt but that Kostner and his friend Baumgartner, who had escaped his liability on the note of $575, (Bayer having neglected to have it protested,) contrived to prevent Bayer from making out of Kostner's store any balance there might remain of the $1775, after selling the mortgaged property, and that Dorn was their good-natured and confiding instrument to do it: When Dorn is asked about the bill of sale by Bayer's brother, he confidingly tells him all about it, confessing that it was done *for show*, that he was induced to do it in order to *prevent Bayer* from getting the goods, and that he had paid *nothing on them*. It may be that, for the purpose of having at least one witness, Dorn and Kostner went through the form of passing some money in the presence of Kline, and saying some words in reference to it in his hearing, but the story that Dorn would have made a permanent investment of $600 in such property as that mentioned in this deed—a confectionary like that of Kostner's— is rather too incredible.

LE GRAND, C. J., delivered the opinion of this court.

The object of the bill in this case is, to have declared fraudulent and void a bill of sale of certain property from Nicholas Kostner to John Dorn, and, as auxiliary thereto, an injunction restraining the sale of the goods mentioned in the bill of sale, and the appointment of a receiver to take charge of them until the further order of the court. On the filing of the bill, the court ordered the injunction and appointed a receiver. The defendants answered under oath and then appealed, but this appeal was abandoned, the court continuing the injunction and receiver until the final hearing. The

court decreed the bill of sale to be void, "as against the complainant and all other creditors of the defendant Kostner, who may become parties to this suit." The bill does not ask a decree for the sale of the property, nor does the court pass one.

The facts alleged in the bill are simply these: That the appellee, Bayer, sold to the appellant, Kostner, a house in Bond street, giving him a deed for it, and taking a mortgage on the same for the payment of the purchase money; that at the time of these transactions, Kostner was the owner of a house on Caroline street, Baltimore, and was the proprietor of certain household furniture and the stock in a confectionary store; that he failed to pay any part of the mortgage debt, and that, with a view to defraud the appellee he sold the house in Caroline street, and fraudulently made the bill of sale to the appellant, Dorn, of the household and other goods; that, in fact, the bill of sale was wholly without consideration and intended to hinder, delay and defraud the creditors of Kostner. The answers expressly deny, under oath, all fraud and aver the perfect *bona fides* of the transaction. The bill did not call for the answers *under oath*, and, there is nothing in the record to show they were read at the hearing by the complainant; they, therefore, are not to be taken as evidence at final hearing, and can only be looked to by the court in connection with the bill, for the purpose of ascertaining what points are at issue. The decision of the case depends, entirely, upon the proof adduced on the part of the respective parties. Some portions of it is unintelligible, and other parts of it without any bearing on the merits of the controversy. Yet, there is sufficient in it to warrant the decree of the Circuit court.

It is clearly to be inferred, from the whole proof, that the defendant, Kostner, had no other property than his house in Caroline street, his household furniture and confectionary stock, and the house on Bond street.

The only evidence adduced to show the absence of fraud in the making of the bill of sale, is that of the witness

Frederick Kline, who testifies that, whilst he was employed in the preparation of the bill of sale, the defendants, Kostner and Dorn, engaged in conversation as to the amount of the purchase money which then remained due from Dorn to Kostner, and that it was ascertained between them to be $153 or $154 and some cents, which were paid to Kostner by Dorn in the presence of witness. *There is no evidence, whatever, of any other payment than that testified to by Kline.* If any was made, no reason is given why proof of the amount and time has not been furnished. If he had other property he should have shown it. *Birely vs. Staley, 5 Gill & Johnson,* 455. In the absence of all explanation, such silence on the subject is, certainly, a circumstance of suspicion. If the testimony of Kline stood alone, it would have its proper weight in rebutting the allegations of fraud, but, when taken in connection with the other evidence, it is no strained inference that the conversation of Kostner and Dorn, in the presence of the witness, Kline, was preconcerted between them, and was a part of the machinery of the fraud; a conversation intended to lull suspicion and cover up delinquency.

There can be no stronger evidence against a man than his own admissions. And we have, in this case, the declaration of Dorn, that he had not paid any thing for the goods. The witness George Bayer—a witness unimpeached—testifies that Dorn, in reply to queries put to him, said: "That he was persuaded by Andrew Baumgartner and Mrs. Baumgartner to take the bill of sale for the reason so that Andrew Bayer could not get hold of Kostner's store," and, that he had not paid anything for the goods. These admissions fully bear out the allegation of fraud in the bill of complaint, and are fortified by the fact, proven by the witness John Schwert, that "the counters and furniture in the dwelling and store in Pratt street,"—the dwelling and store to which Kostner removed after the execution of the bill of sale—"are the same that he had in Bond street, and he removed them from Bond street."

The claim of the complainant, and the fraudulent character of the bill of sale, being established to our satisfaction, we affirm the decree of the Circuit court.

*Decree affirmed with costs.*

(Decided June 15th, 1860.)